**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **PHUONG THANH NGUYEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1351-R** |
| | ) | |
| **TODD BLANCHE, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Phuong Thanh Nguyen, a noncitizen[1] and Vietnamese national, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). Doc. 1. United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. Respondents timely filed a Response, and Petitioner timely filed a Reply. Docs. 15, 16. On September 14, 2026, Petitioner filed a Motion to Expedite Issuance of a Report and Recommendation. Doc. 22.

For the reasons below, the undersigned recommends that the Court grant the Petition to the extent it requests habeas relief for release from ICE custody. The undersigned further recommends the Court deny as moot Petitioner's motion to expedite.

[1] Unless directly quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. **Background**

Petitioner is a citizen of Vietnam who was lawfully admitted to the United States and became a lawful permanent resident on or about February 19, 1991. Resp. at 9; Doc. 15-1 at ¶ 5 (Declaration of ICE Deportation Officer ("DO") Honeycutt); Doc. 15-3 at 1 (Notice to Appear).

On February 23, 2001, Petitioner pleaded guilty in the District Court of Oklahoma County to Assault and Battery with a Deadly Weapon and Attempted Subordination of Perjury. Resp. at 9; Doc. 15-1 at ¶¶ 6-7; *see also* Doc. 15-2 (Petitioner's Oklahoma State Criminal Record). He was sentenced to 15 years' and 2.5 years' imprisonment, to serve concurrently, in custody of the Oklahoma Department of Corrections ("ODOC"); the state judge ordered those sentences to be served concurrently with Petitioner's 10-year sentence from separate convictions in Oklahoma County for Kidnapping, Larceny of an Automobile, Possession of a Firearm while Committing a Felony, and Larceny of a Motor Vehicle. Resp. at 9; Doc. 15-1 at ¶¶ 7-8; Doc. 15-2.

On January 31, 2002, ICE initiated removal proceedings against Petitioner through issuance of a Notice to Appear, charging him as removable under (1) 8 U.S.C. § 1227(a)(2)(A)(iii) for an aggravated felony conviction after admission, and (2) 8 U.S.C. § 1227(a)(2)(C) for a firearm offense. Resp. at 10; Doc. 15-1 at ¶ 9; Doc. 15-3 at 1-2. On June 18, 2002, Petitioner was ordered removed to Vietnam and his order of removal became final on the same day. Pet. at 2; Resp. at 10; Doc. 15-4 at 1 (Order of Removal).

On May 17, 2007, ICE took custody of Petitioner after his release from ODOC. Doc. 15-1 at ¶ 12. On October 12, 2007, he was released on an Order of Supervision

("OOS"). Resp. at 10; Doc. 15-1 at ¶ 14. On or about October 1, 2008, ICE sent Petitioner a travel document request, asking him to provide a letter and proof of delivery to the Government of Vietnam consulate requesting a travel document. Doc. 15- 1 at ¶ 15.[2]

DO Honeycutt alleges, on or about June 13, 2016, Petitioner "reported late" to a scheduled ICE check-in that was set to occur on June 9, 2016. *Id.* ¶ 16. DO Honeycutt also alleges Petitioner missed a scheduled appointment date on March 4, 2024. *Id.* ¶ 17. ICE informed Petitioner on March 5, 2024, that it would not renew his employment authorization if he failed to provide proof that he filed an appeal of the Immigration Judge's order of removal at his next check in. *Id.* ¶ 18. DO Honeycutt alleges Petitioner failed to provide proof of appeal at his next check-in appointment on December 16, 2024. *Id.* ¶ 19.

On December 16, 2025, ICE re-detained Petitioner at a scheduled check-in appointment and revoked his OOS.[3] Pet. at 15; Doc. 15-1 at ¶ 20. Petitioner alleges he did not violate any condition of his OOS before he was re-detained.[4] Pet. at 15. That day, ICE served[5] Petitioner with a written Notice of Revocation of Release, stating his OOS was revoked "pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13," and he would be detained

---

[2] Neither Respondents nor DO Honeycutt address whether this request was ever sent to the Government of Vietnam or whether Petitioner ever provided proof of delivery as requested.

[3] DO Honeycutt alleges on the same day ICE "determined that the likelihood of removal in the reasonably foreseeable future for NGUYEN." Doc. 15-1 at ¶ 20. The undersigned is unclear whether DO Honeycutt meant to allege ICE determined that Petitioner's removal was now likely in the reasonably foreseeable future.

[4] Petitioner does not address DO Honeycutt's assertions about missed ICE check-ins.

[5] Petitioner alleges he was not served with the Notice of Revocation, Pet. at 15, but the Notice provided by Respondents shows Petitioner was served, Doc. 15-5 at 2.

"based on a review of [his] official alien file and a determination that there are changed circumstances." Doc. 15-5 at 1 (Notice of Revocation of Release). The Notice also stated Petitioner would "promptly be afforded an informal interview at which [he would] be given an opportunity to respond to the reasons for the revocation." *Id.*[6] Also on December 16, 2025, he was served with a Warrant of Removal/Deportation. Doc. 15-6 at 2 (Warrant of Removal/Deportation).

DO Honeycutt alleges in January 2026 ICE "began working on [a] request to the Government of Vietnam for [Petitioner's] travel document." Doc. 15-1 at ¶ 21. ICE-Enforcement and Removal Operations ("ERO) sent Petitioner's travel document request to Removal and International Operation ("RIO") on January 21, 2026. *Id.* ¶ 22. DO Honeycutt alleges travel document requests are sent to the Government of Vietnam, "the Government of Vietnam schedules the applicant for an interview to make a determination for travel," and "generally, Vietnam facilitates travel documents within 30 days from interview date." *Id.* ¶ 23 (citation modified). According to DO Honeycutt, ICE sent "inquiries to learn the status of [Petitioner's] travel document request and interview with the Government of Vietnam" in February, March, and April. *Id.* ¶ 24. As of DO Honeycutt's Declaration on June 25, 2026, ICE was "awaiting Notice from the Government of Vietnam with the date for [Petitioner's] nationality interview." *Id.* ¶ 25. On June 17, 2026, ICE conducted a custody review interview. *Id.* ¶ 26. DO Honeycutt asserts "Vietnam has issued travel documents for every travel document request ICE-ERO

---

[6] Respondents did not provide evidence in the record that any interview occurred.

has submitted since February 2025" and ICE "has averaged at least two charter flights to Vietnam per month." *Id.* ¶ 29. He believes Petitioner's removal is significantly likely in the reasonably foreseeable future. *Id.* ¶ 30.

Petitioner, on the other hand, alleges he "has no valid travel document" but he "provided Respondents with a copy of his Vietnamese birth certificate in or around April 2026." Pet. at 3. He alleges if either he or Respondents ever previously applied for travel documents, such requests were denied or ignored. *Id.* He alleges "the government is not in possession of any credible or persuasive documents of evidence that [his] removal is likely to occur in the reasonably foreseeable future." *Id.* at 4-5 (citation modified).

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma. *Id.* at 4. He remains detained there. *See* Doc. 24 (confirming Petitioner remains detained at Cimarron Correctional Facility).

On July 8 and July 10, 2026, Respondents informed the Court that Petitioner was "scheduled for a flight to Vietnam to depart on or about July 28, 2026." Docs. 17, 19. On August 19, 2026, when no confirmation of Petitioner's removal to Vietnam was filed, the Court ordered Respondents to confirm whether he was removed. Doc. 20. On August 24, 2026, Respondents responded asserting (1) "the Government of Vietnam did not approve the travel document for that flight in time"; (2) "a travel document is still pending"; and (3) "ICE ERO headquarters is currently scheduling the next flight to Vietnam for September 8, 2026." Doc. 21. On September 24, 2026, Respondents confirmed Petitioner was still detained, meaning he was not removed on the September 8, 2026, flight to Vietnam. Doc. 24. Respondents have provided no further updates on Petitioner's

anticipated removal, including whether an interview with the Government of Vietnam occurred or whether his travel document has been approved.

## II. Petitioner's Claims

Petitioner raises four grounds for relief:

- **Ground One: Declaratory Relief.** Petitioner requests a declaratory judgment that he "is detained pursuant to 8 U.S.C. § 1231(a)(1)," he "has previously demonstrated to ICE's satisfaction that there is no significant likelihood of his removal in the reasonably foreseeable future ("NSLRRFF")," "that ICE did not rebut [his] prior NSLRRFF showing prior to redetaining him," and "that until ICE rebuts [his] prior NSLRRFF showing, [he] may not be redetained." Pet. at 25-26.

- **Ground Two: Violation of the Immigration and Nationality Act ("INA") and Applicable ICE Regulations.** Petitioner contends his detention violates 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.13. Pet. at 16. Specifically, he alleges Respondents "failed to comply with these provisions" before re-detaining him after his release on an OOS and no alternative basis supports their decision to re-detain him. *Id.*

- **Ground Three: Violation of the Fifth Amendment.** Petitioner alleges his detention violates the Due Process Claim because he "previously established to the government's satisfaction that there was no significant likelihood of removal in the reasonably foreseeable future," "the government has not rebutted this [showing]," "the government does not presently have a travel document for [him]," and "there are no new circumstances that otherwise justify [his] redetention." *Id.* at 26-27 (citation modified).

- **Ground Four: Violation of the Administrative Procedure Act ("APA").** Petitioner alleges Respondents violated the APA because they "have failed to articulate any reasoned explanation for redetaining [him]" or "failing to comply with the plain language of 8 C.F.R. § 241.13(g), (i)(2)-(3)." Pet. at 27-28.

Petitioner seeks immediate release from ICE detention subject to the conditions of his prior OOS. *Id.* at 29. He also seeks injunctive and declaratory relief, including restraints on Respondents' attempts to move him from Oklahoma, remove him to a third

country, or re-detain him without travel documents. *Id.* at 28-30. Petitioner also seeks attorney fees and costs under the Equal Access to Justice Act ("EAJA"). *Id.* at 30.[7]

## III. Relevant Standards

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A). This 90-day period is known as the "removal period." *Id.* The removal period begins on the latest of: (1) date that the order of removal becomes administratively final, (2) the date of the court's final order when a removal order is judicially reviewed, or (3) the date the noncitizen is released from detention or confinement if detained, unless the noncitizen is confined under immigration processes. *Id.* § 1231(a)(1)(B). During the removal period, noncitizens are subject to mandatory detention. *Id.* § 1231(a)(2)(A).

However, the detention of a nonresident subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal

[7] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

period. *See Zadvydas*, 533 U.S. at 701. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Ordinarily, "if the alien does not leave or is not removed within the removal period," he may be released "subject to supervision." 8 U.S.C. § 1231(a)(3) (citation modified). Criminal aliens detained beyond the removal period under § 1231(a)(6) may also be released "subject to supervision." As relevant here, after ICE releases a noncitizen on an OOS, federal immigration officials may later revoke his OOS and return the noncitizen to custody if he violates conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2).[8] Such revocation triggers a notification and review process:

> **Revocation procedures.** Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

---

[8] Federal officials codified *Zadvydas* principles into immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247 (F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for [ICE] to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future.").

*Id.* § 241.13(i)(3).

## IV. Analysis[9]

### A. The Court has jurisdiction to hear Petitioner's claims regarding ICE's revocation of his OOS.

Respondents argue this Court "lacks jurisdiction to review" Petitioner's challenge to his re-detention, because his challenge attacks the action taken to execute his removal order and "8 U.S.C. § 1252(g) strips district courts of jurisdiction" over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Resp. at 22. Relying on *Tazu*, Respondents assert "re-detention [is] 'simply the enforcement mechanism'" chosen to execute Petitioner's removal and therefore the Court lacks jurisdiction over his claim. *Id.* (quoting *Tazu v. Att'y Gen. of United States,* 975 F.3d 292, 298 (3d Cir. 2020)). The undersigned disagrees.

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained § 1252(g)'s jurisdictional bar is narrow in scope and applies only to "three discrete actions"—the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a

[9] Petitioner claims he did not have to exhaust statutory or administrative remedies before filing the Petition. Pet. at 12-15. Respondents do not allege he failed to exhaust his remedies before filing the Petition. The undersigned agrees that Petitioner did not have to exhaust before filing the Petition and therefore does not address exhaustion at length. *See Soberanes*, 388 F.3d at 1310 (holding exhaustion requirements do not apply to challenges to immigration detention brought in habeas proceedings).

shorthand way of referring to all claims arising from deportation proceedings." 525 U.S. at 482.

Respondents' position has been rejected by Judges in this District, including this Court, and the Court should do the same here. *See, e.g.*, *Vu v. Blanche*, No. CIV-26-446-R, 2026 WL 1757826, at *1 (W.D. Okla. June 18, 2026) (rejecting "Respondents' arguments again" as to § 1252(g) and "find[ing] the statute does not jurisdictionally bar consideration of the Petition"); *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (noting *Tazu* "is not persuasive in light of the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions of § 1252," and concluding the Court's "ability to consider the petition is not barred by § 1252(g)" because petitioner was "not seeking review of the Executive's decision to execute an order of removal" but arguing "he is detained in violation of the INA because Respondents failed to comply with the applicable regulations prior to redetaining him after he was previously released on an OOS" (citation modified)); *Nguyen v. Bondi,* No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction here.").

Here, Petitioner does not challenge the underlying merits of the removal. Rather, he contends ICE unlawfully revoked his OOS, rendering his detention unlawful. The Court should find it has jurisdiction to consider the Petition.

### B. ICE failed to abide by its regulations when it revoked Petitioner's OOS.

Petitioner alleges Respondents failed to comply with the INA and ICE's applicable regulations before re-detaining him after his prior release on an OOS. Pet. at 26. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

Petitioner's re-detention is governed by 8 U.S.C. § 1231(a)(3) and its related regulations because he was released on an OOS on October 12, 2007. Resp. at 10; Doc. 15-1 at ¶ 14. Further, Petitioner's OOS was revoked under 8 C.F.R. § 241.13. Doc. 15-5 at 1 (Notice of Revocation of Release "pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13").

Respondents do not rebut Petitioner's allegation that ICE previously released him in 2007 because ICE determined that there was no significant likelihood of his removal in the reasonably foreseeable future. *See* Pet. at 2 (alleging he was placed on an OOS under 8 C.F.R. §§ 241.5, 241.13 "due to evidence in [his] file that demonstrated there was no significant likelihood of his removal to Vietnam in the reasonably foreseeable future"). The undersigned therefore reasonably infers that when Petitioner was previously released in 2007 ICE must have determined "there was no significant likelihood of removal in the reasonably foreseeable future" under 8 C.F.R. § 241.13(a), (b)(1), before issuing the OOS.

*See*, *e.g.*, *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025) (finding "it is reasonable to infer that ICE must have made a determination that 'there was no significant likelihood of removal in the reasonably foreseeable future'" in similar circumstances (citing § 241.13(a), (b)(1)) (R&R), *adopted*, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025); *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025) (same) (R&R), *adopted,* 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025).

The issue before the Court is whether Petitioner's OOS was properly revoked when ICE re-detained him on December 16, 2025. The undersigned determines that it was not.

**1. Violation of § 241.13(i)(2)**

ICE may revoke an OOS and "return the alien to custody" if he violates the conditions of supervised release or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Though Respondents reference Petitioner's purported missed check-in appointments, they do not contend that was the reason for his re-detention in December 2025.[10] Rather, Respondents rely on "the drastically changed circumstances regarding removals to Vietnam" and DO Honeycutt's bare assertion that "it was determined by ICE that Petitioner was significantly likely to be

[10] In any event, the record does not support an argument Petitioner's purported missed check-ins were the reason for his re-detention, considering he allegedly missed a check-in in June 2016 and March 2024 but was not re-detained until December 2025—despite other contacts with ICE between March 2024 and December 2025. Doc. 15-1 at ¶¶ 16-19.

removed to Vietnam." Resp. at 21, 25; *see also id.* at 20 ("Stated simply, the new administration's prioritization of removals to Vietnam establish a clear change in circumstances for those individuals ordered removed to Vietnam. And Petitioner is no different.").

As an initial matter, Judges in this District have concluded "the burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025); *see Ye v. Bondi,* No. CIV-25-1230-D, 2025 WL 3485420, at *2 (W.D. Okla. Dec. 4, 2025) (finding "the magistrate judge appropriately placed the burden on Respondents to establish that, on account of changed circumstances, there is a significant likelihood of removal in the reasonably foreseeable future, pursuant to Section 241.13(i)(2)"). Other courts have agreed. *See, e.g.*, *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding it was ICE's burden to demonstrate substantial likelihood of removal in the reasonably foreseeable future at the time of re-detention); *Roble v. Bondi,* 803 F. Supp. 3d 766, 772-73 (D. Minn. 2025) (same); *Escalante v. Noem*, No. 25-cv-182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (same); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150-51 (D. Mass. 2025) (same).

When deciding to revoke an OOS on account of changed circumstances, ICE must make an individualized determination that the changed circumstances make removal of the noncitizen significantly likely in the reasonably foreseeable future. *See Kong,* 62 F.4th at

619-20 (citing 8 C.F.R. § 241.13(i)(2)). The regulations specify that ICE should consider several factors in making this determination, including:

> [t]he history of the alien's efforts to comply with the order of removal, the history of [ICE's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

The record evidence here, however, shows ICE failed to make any individualized determination about the significant likelihood of Petitioner's removal based on changed circumstances, as required by § 241.13(i)(2). In the Notice of Revocation of Release, ICE alleges "changed circumstances in [Petitioner's] case" but does not identify what those changed circumstances are. Doc. 15-5 at 1. In his declaration, DO Honeycutt asserts only that ICE determined, on or about December 16, 2025, "the likelihood of removal in the reasonably foreseeable future for NGUYEN," and "on or about January 21, 2026, ICE-ERO sent the Removal and International Operation (RIO) [Petitioner's] completed travel document request." Doc. 15-1 at ¶¶ 20, 22 (citation modified). According to DO Honeycutt, "travel requests are sent to the Government of Vietnam" and "the Government of Vietnam then schedules the applicant for an interview to make a determination for travel." *Id.* ¶ 23 (citation modified).

When confronted with similar facts, Judge Maxfield of this District recommended habeas relief, observing:

> ICE also asserts that "following Petitioner's arrest, ICE gathered the relevant paperwork and compiled a travel document request," which was sent to ICE

> headquarters on October 27, 2025, *i.e.*, more than a month after Petitioner was detained. Respondents assert that headquarters "then sends the request to the People's Republic of China." Again, this information about ICE's internal process lacks sufficient specificity with regard to Petitioner's likelihood of removal. Respondents do not state if or when ICE headquarters actually sent the request to China, where the request was sent – for instance, a consulate or embassy – whether it was received, or whether China has made any response. In the absence of further factual declarations from Respondents, the undersigned assumes that none of these actions have occurred. There is nothing about local ICE authorities sending a travel document request for Petitioner to a particular ICE department that constitutes "changed circumstances" making his removal any more likely than it ever was.

*Ye v. Bondi*, No. CIV-25-1230-D, 2025 WL 4034264, at *5 (W.D. Okla. Nov. 18, 2025) (citation modified) (R&R), *adopted in relevant part*, 2025 WL 3485420 (W.D. Okla. Dec. 4, 2025).

Similarly, DO Honeycutt here asserts that ICE-ERO sent to RIO inquiries about the status of Petitioner's travel document request and interview in February, March, and April of 2026, Doc. 15-1 at ¶ 24, but he does not allege Petitioner's travel document request was ever sent to Vietnam or an interview was ever scheduled. Thus, record evidence of ICE's efforts to secure a travel document for Petitioner consists only of internal agency communications without direct engagement with Vietnamese authorities, whose cooperation is essential for effectuating Petitioner's removal. And the Honeycutt Declaration is dated June 24, 2026. Doc. 15-1 at 6. Over the past 16 weeks, Respondents have provided no updates regarding the status of the travel document request, including whether RIO forwarded the request to the Government of Vietnam or an interview with the Government of Vietnam has been scheduled. *See, e.g.*, *Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1269 (W.D. Okla. 2026) (considering "there has been no supplementation of the

record" by ICE officials about petitioner's passport application since initial briefing several weeks prior, when concluding there was no significant likelihood of removal in the reasonably foreseeable future). With no information to the contrary, the undersigned presumes ERO has not taken additional steps to obtain Petitioner's travel document apart from those provided in DO Honeycutt's declaration. *See Ye*, 2025 WL 4034264, at *5 ("In the absence of further factual declarations from Respondents, the undersigned assumes that none of these actions [related to progress with travel document requests] have occurred.") (R&R), *adopted in part*, 2025 WL 3485420.[11]

Thus, the undersigned concludes these generalized statements about ICE's intention to request a travel document from Vietnam are insufficient to establish a significant likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future. This analysis is consistent with other district courts. *See Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sep. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to

[11] While this case has been pending, Respondents informed the Court that Petitioner was scheduled for removal. *See* Doc. 17 ("Petitioner is scheduled for a flight to Vietnam to depart on or about July 28, 2026."); Doc. 21 ("Petitioner was previously scheduled for removal on July 28, 2026, but the Government of Vietnam did not approve the travel document for that flight in time. . . . A travel document is still pending, and ICE ERO headquarters is currently scheduling the next flight to Vietnam for September 8, 2026."). But Petitioner remains detained with no update from Respondents whether (1) Vietnam has approved his travel document request or (2) he is scheduled on any future flight to Vietnam.

meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (citation modified); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future.").

Nor did Respondents initiate the process to obtain a travel document for Petitioner until January 2026—*after* his re-detention on December 16, 2025—when ICE-ERO began working on a request to the Government of Vietnam. *See* Doc. 15-1 at ¶ 21. Courts have held travel documents requested or received after the revocation of release are not changed circumstances that can justify revocation under § 241.13(i)(2) because they did not exist or occur at or before the time of revocation. *See, e.g.*, *Munagi v. McDonald*, 813 F. Supp. 3d 225, 229 (D. Mass. 2025) (granting petitioner's release, even though the government had obtained travel documents for petitioner's return to Kenya, because the travel documents were not requested until after petitioner's release had been revoked); *Duong v. Charles*, No. 25-cv-1375, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (granting petitioner's immediate release, even though the government had obtained travel documents for petitioner's return to Vietnam, because the travel documents were not requested until almost one month after petitioner's release had been revoked); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (recommending petitioner's release after concluding respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted

the supposedly changed circumstances underlying the Notice") (R&R), *adopted*, 803 F. Supp. 3d 775, 784 (D. Minn. 2025).

Respondents argue the increased removals to Vietnam show circumstances have changed such that Petitioner's removal is substantially likely in the reasonably foreseeable future, in part relying on statistics provided in DO Honeycutt's declaration. *See* Resp. at 20-21. Respondents contend:

> in fiscal year 2024, only 58 removals occurred; however, in FY 2025 that number jumped to 699. And removals in FY 2026 are already at 632. DO Honeycutt indicates that Vietnam is willing to accept its citizens and, incredibly, that *every* travel document request ERO has submitted since February 2025 has resulted in an issued travel document, and that two chartered flights are leaving to Vietnam each month.

*Id*. at 20 (citation modified).

However, Judges in this District and elsewhere have found increased removals alone do not demonstrate significant likelihood of removal in the reasonably foreseeable future for a particular petitioner's removal. *See, e.g.*, *Pham*, 2025 WL 3243870, at *2 (finding similar claims of increased removals to Vietnam "alone does not demonstrate significant likelihood of removal in the reasonably foreseeable future"); *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026) ("Respondents' citation of evidence showing a general upswing in Vietnam's willingness to repatriate its citizens who are in the United States does not suffice to show that Respondents made a specific determination, prior to revoking Petitioner's OOS and detaining Petitioner, that in light of changed circumstances there was a significant likelihood that Petitioner may be removed to Vietnam in the reasonably foreseeable future.").

First, neither Respondents nor DO Honeycutt explain why *Petitioner's* removal is likely in the reasonably foreseeable future. Second, even if the Court were to accept as true DO Honeycutt's claim that "the Government of Vietnam has issued travel documents for every travel document request ERO has submitted since February 2025," the declaration is too vague to carry Respondents' burden under § 241.13(i)(2). Critically, DO Honeycutt does not state how many travel document requests ERO has submitted since February 2025. Without that denominator, Respondents' "every request" statistic is not probative: it could reflect a substantial, sustained shift in Vietnam's practices, or it could reflect a small number of requests. This ambiguity matters because not every removal requires a travel document request from Vietnam—for example, when a noncitizen possesses a valid passport or other acceptable documentation). *See Nguyen*, 788 F. Supp. 3d at 151 (finding the government's assertion that 44 individuals were removed to Vietnam in fiscal year 2024 and 285 were removed in fiscal year 2025 failed to establish a change in circumstances to show a substantial likelihood that removal was reasonably foreseeable where the government did not identify how many of the 328 removed individuals were pre-1995 Vietnamese refugees, like petitioner, and also failed to indicate how many travel document requests had been made).

Therefore, even on Respondents' own framing, generalized statistics and assertions in DO Honeycutt's Declaration are insufficient to satisfy Respondents' burden to show the existence of "changed circumstances" when revoking the OOS, as required under § 241.13(i)(2). Respondents fail to demonstrate how these general conditions, when considering the record as a whole, show a significant likelihood that *Petitioner* will be

removed in the reasonably foreseeable future. Without individualized evidence, Respondents' reliance on vague, unquantified claims about travel documents issued in other cases does not establish changed circumstances making Petitioner's removal substantially likely in the reasonably foreseeable future. *See Vu*, 2026 WL 1757826, at *1 ("Respondents reliance on an overall increase in removals to Vietnam and general statements about attempting to obtain a travel document do not show a significant likelihood that Petitioner will, on account of changed circumstances, be removed in the near future."); *Tran*, 2026 WL 1181700, at *2 (finding "Respondents' citation of evidence showing a general upswing in Vietnam's willingness to repatriate its citizens who are in the United States does not suffice to show that Respondents made a specific determination" about petitioner).

**2. Habeas relief as an appropriate remedy**

Respondents fail to show ICE abided by its own regulations when revoking Petitioner's OOS, making the revocation unlawful. The undersigned next considers an appropriate remedy for ICE's failure to comply with its own regulations. Judges in this District have found "fail[ure] to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of Petitioner's re-detention" "amounts to a due process violation, entitling the petitioner to habeas relief." *Pham*, 2025 WL 3243870, at *1; *see also Vu*, 2026 WL 1757826, at *2 (agreeing "that ICE's failure to comply with its own regulations when revoking the Order of Supervision renders the revocation unlawful and release is the appropriate remedy"); *Ye*, 2025 WL 3485420, at *3 (finding "ICE's failure

to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and that his release is therefore appropriate"); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) (granting habeas relief where respondents failed to satisfy § 241.13(i)(2)).

Respondents rely on two local District Judges' decisions to argue habeas "is not a mechanism for courts to order the fulfillment of administrative requirements or direct release on that basis." Resp. at 25-26; *see Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *3-4 (W.D. Okla. Oct. 31, 2025); *Nguyen v. Bondi*, No. CIV-25-1204-JD, Order, Doc. 20 (W.D. Okla. Dec. 31, 2025). The undersigned finds these cases to be factually distinguishable.[12] The undersigned agrees with the predominant view of Judges in this District who have found habeas relief to be appropriate when ICE violates its own regulations when re-detaining a noncitizen like Petitioner's circumstances here.

Therefore, because ICE violated its own regulations, Petitioner's detention is unlawful and his release is appropriate under 28 U.S.C. § 2241(c)(3). *See Vu*, 2026 WL 1757826, at *2 (ordering release after finding revocation of petitioner's OOS was unlawful where ICE failed to establish changed circumstances before revocation as required by § 241.13(i)(2)); *Ye*, 2025 WL 3485420, at *3 (same); *Hamidi*, 2025 WL 3452454, at *3

[12] "Judge Wyrick in *Bahadorani* acknowledges there are circumstances where a violation of 241.13(i)(2) and (i)(3) can warrant habeas relief where the violation rises to the level of 'a serious substantive defect . . . beyond a mere failure to follow the regulation to a T.'" *Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 n.2 (W.D. Okla. Feb. 19, 2026) (quoting *Bahadorani,* 2025 WL 3048932, at *3). The undersigned concludes ICE's violation of 241.13(i)(2) is a serious substantive defect.

("ICE's violation of § 241.13(i) denied Petitioner the process to which he was entitled by law and that such a denial entitles Petitioner to habeas relief").[13]

The undersigned notes this Court has declined to order a petitioner's immediate release, in a case where respondents failed to follow 8 C.F.R. § 241.13(i)(2), when the petitioner's removal was "imminent." *Bol v. Mullin*, No. CIV-26-449-R, 2026 WL 1452462, at *3-4 (W.D. Okla. May 22, 2026). Respondents here filed a Notice on July 8, 2026, of Petitioner's anticipated removal, but more than three months have passed and multiple flights to Vietnan have presumably occurred since that time, and Petitioner remains detained. *See* Doc. 15-1 at ¶ 29 (stating that "DHS has averaged at least two charter flights of removals to Vietnam per month"); Doc. 21 (noting the next scheduled flight to Vietnam was on September 8, 2026, but not alleging Petitioner was scheduled to

[13]Other districts courts have found release appropriate in similar circumstances. *See Nguyen v. Warden of the Golden State McFarland Det. Facility*, No. 2:25-CV-03297-SKO (HC), 2026 WL 72110, at *4 (E.D. Cal. Jan. 9, 2026) ("Because the Government was required to, but failed to comply with, section 241.13(i) when it revoked Petitioner's supervised release on October 16, 2025, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions."); *Sanchez v. Bondi*, No. 25-CV-02287, 2025 WL 3484756, at *1 (D. Colo. Dec. 4, 2025) (granting petitioner's release because revocation of his OOS was effected without compliance with applicable regulations); *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) (finding petitioner's re-detention did not comply with the requirements of 8 C.F.R. § 241.13, and granting habeas relief); *E.M.M. v. Almodovar,* No. 25-CV-08212 (MMG), 2025 WL 3077995, at *4 (S.D.N.Y. Nov. 4, 2025) (holding "[i]f the Government's violation of its own regulations culminates in an alien's detention, due process may require that alien's release" and granting habeas relief); *Yee S. v. Bondi*, 2025 WL 2879479, at *6 (D. Minn. Oct. 9, 2025) (ordering release because petitioner showed ICE's re-detention of him "violated the law because ICE did not comply with its own regulations under section 241.13(i)(2)"); *Roble*, 803 F. Supp. 3d at 774 (holding "ICE, like all government agencies, must follow its own regulations," and ordering release based on violation of 8 C.F.R. § 241.13(i) (citation modified)); *Sarail A.*, 803 F. Supp. 3d at 784 (ordering release based on violation of 8 C.F.R. § 241.13(i)).

be on that flight). Respondents have neither provided a new date for Petitioner's scheduled removal nor otherwise updated the Court about his purported removal. Unlike *Bol*, no evidence in the record here indicates "Petitioner's imminent removal," 2026 WL 1452462, at *4. As a result, while a close call, the undersigned concludes release is the appropriate remedy notwithstanding Respondents' previous assertions that he is scheduled for removal.

### C. The Court should decline to address Petitioner's additional claims.

Petitioner also alleges his re-detention violated his Fifth Amendment right to due process, the APA, and the Declaratory Judgment Act. Pet. at 25-28. Because the undersigned recommends the Court grant the Petition after finding ICE violated its own regulations by revoking Petitioner's OOS and re-detaining him, the Court should decline to address his remaining claims. *See Sanchez*, 2025 WL 3484756, at *1 (declining to reach petitioner's *Zadvydas* claim after agreeing with him on his regulatory violation claim); *see also Ye*, 2025 WL 3485420, at *2 n.2 (acknowledging the Magistrate Judge did not consider petitioner's remaining arguments for habeas relief after recommending habeas relief on the regulatory violation); *Hamidi,* 2025 WL 3452454, at *2 n.2 (same). Further, considering the recommended relief, the Court need not address Petitioner's other requests for injunctive and declaratory relief. *See* Pet. at 28-31.

## V. <u>Petitioner's Motion to Expedite, Doc. 22</u>

On September 14, 2026, Petitioner filed a Motion to Expedite Issuance of Report and Recommendation. Doc. 22. Adoption of this Report and Recommendation would moot Petitioner's motion.

## VI. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **GRANT** the Petition, Doc. 1, to the extent Petitioner requests habeas relief for release from ICE custody. The undersigned recommends that the Court order Respondents to release Petitioner from ICE custody immediately, subject to an appropriate Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)). The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order. Adoption of this recommendation would **MOOT** Petitioner's pending Motion to Expedite Issuance of Report and Recommendation, Doc. 22.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **October 23, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **October 28, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 16th day of October, 2026.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE